2015-1406 National Oilwell Varco v. Omron Oilfield & Marine. Mr. Raleigh, please proceed. Thank you, Your Honor. May it please the Court, I'm John Raleigh and this is Bobby Bowick and we're here on behalf of National Oilwell Varco. A standing decision based on contractual interpretation, Your Honor, is reviewed de novo by this Court. The lower court's decision is entitled to no deference under the case law. In this case, the lower court... Mr. Raleigh? Yes, Your Honor. The corporate structure involved here with your client is somewhat complex. Is there... can we just go through a little bit of it so I understand it? Yes, Your Honor, I'm happy to. Okay, there's a company called MD Totco. Yes, that is a... Martin Decker Totco? That was or is a division of Varco L.P. Correct. There's still a division of Varco L.P.? It's a DBA. It's just... it's not an actual entity apart from Varco L.P. It's just a DBA, Your Honor. So maybe we can consider Varco L.P. and MD Totco as one and the same? You can consider MD Totco as Varco L.P. Okay, and then Varco L.P. was a subsidiary of Varco Incorporated? Yes, at one time. Right, at one time, because then Varco Incorporated and National Oil Well Incorporated merged into something that became National Oil Well Varco Incorporated. Correct. Okay, and then underneath what was once upon a time National Oil Well Incorporated was a subsidiary called National Oil Well L.P.? Correct. Which changed its name to National Oil Well Varco L.P.? Correct. And so National Oil Well Varco L.P., also known as NOV L.P., is like a sister subsidiary of Varco L.P.? It was at one time, and then pursuant to the Assets Contribution Agreement, which is at issue in this case, Varco L.P. transferred its assets to National Oil Well Varco L.P. But there are separate legal entities that still exist, one called Varco L.P. Correct. And one called NOV L.P. Yes, Your Honor, but Varco L.P. has no assets currently, pursuant to its tax returns. Then why was Varco L.P. listed as a plaintiff in the Canadian case? Great question. The Canadian court issued an opinion in 2013, noting that Varco L.P. is the owner of the patent there, that is the sister patent for the 142 here. I don't claim to be an expert on Canadian law, Your Honor, but I can tell you my understanding. That case was filed in 2005, prior to the Asset Contribution Agreement. So at that time, Varco L.P. was the owner. There were no new pleadings in the case. My understanding was everybody in the chain of title was added as a plaintiff because Canada is unclear about whether it recognizes transfer of interest in lawsuits, so they were all in there. But ownership was never an issue in that case because the Canadian counterpart had an exclusive license. There was a $50 million judgment there, right? Correct. And so somebody cut a check to Varco L.P.? No, to National Oil Well Varco, Your Honor. How did they do that when National Oil Well Varco was never listed as a plaintiff in that case? Because everybody in the world knows that National Oil Well Varco owns the assets of Varco L.P., except for our opponents in this case and the lower court. But the point is that case was the National Oil Well Varco L.P. needed to be identified as a plaintiff in that Canadian litigation. Well, the judgment was not executed, Your Honor. There was a settlement with National Oil Well Varco, and that was the $112 million payment. But to answer Your Honor's question more directly, the Canadian company had an exclusive license to prosecute the Canadian counterpart to the 142, the 313 patent, and that's what was done in Canada, and they were the lead plaintiff. So ownership was never really an issue in that case. But what I'm saying is, doesn't it seem like if all of you guys, whoever you are, believe that National Oil Well Varco L.P. was the owner of the patent as of January 2006, then there needed to be a paper filed in the Canadian court, letting the Canadian court know that the patent had transferred over to National Oil Well Varco L.P. instead of allowing the Canadian court to keep going and believing that Varco L.P. was the true owner of the patent. I did, Your Honor. I was in Canadian counsel, but I know that that case was filed prior to the ACA. There were no new pleadings. So the time it was filed, Varco L.P. was the owner, but the case was prosecuted as lead counsel. Right, but by 2013, that was well over seven years after the supposed transfer took place. They certainly could have filed an amended pleading. I guess, but I don't really know because I don't understand Canadian law, Your Honor. But you're correct. This is not about understanding the intricacies of Canadian law. This is about trying to get straight who is the proper plaintiff in a case and notifying the courts of that. They did not file an amended pleading, Your Honor. Now, why – The thing is – Then the Colorado case – Can I – No, I need to know this. I need to straighten this out. Okay. In the Colorado case, you told the Colorado District Court that Varco L.P. had changed its name into becoming National Oil Well Varco L.P. But, of course, that's not the case because we just settled the issue that they're really sister subsidiaries that are separate legal entities. And so now we have a situation where the Colorado District Court was, to put it charitably, misinformed as to who – as to what really happened there with this complex corporate structure. Our local counsel – Is that fair to say? Our local counsel – Do I have it right? Tell me where I'm wrong. Yes, Your Honor. Our local counsel gave – Am I wrong? Am I wrong? In part, Your Honor. Okay. Tell me where am I wrong. Because it was a shorthand version for what really happened. Rather than tell the whole tale, our local counsel said name change. There was a name change. National Oil Well Inc. and Varco – that became National Oil Well Varco. National Oil Well L.P. changed its name to National Oil Well Varco L.P. Varco L.P. assigned its assets to that newly named company. Varco L.P. never changed its name. That's correct. Into National Oil Well Varco L.P. That's correct. Is that correct? No, it was an assets transfer. That is correct, Your Honor. There was never a name change. They remained separate legal entities. I believe the name change that my local was referring to was the name change from National Oil Well – No, the district court took and accepted the entry by the plaintiff that its name, Varco L.P., had been changed to National Oil Well Varco L.P. All I know is, Your Honor, what happened between the parties at the time in January 2006 confirmed by the contract and all of the extrinsic evidence at that moment in time by the parties. Respectfully, a statement by counsel years later in court, which may not be fully accurate, is not dispositive over the conduct and attitude and testimony of the parties and the contemporaneous documents at the time and the tax returns filed under a risk of federal prosecution that say that before the ACA there's zero non-cash assets and after the ACA – I mean before the ACA there's hundreds of millions of dollars in non-cash assets and after there's zero. Well, who defended the re-examination of the 142 patent back in 2001, 2010? There were several. It was Varco L.P., right, because Mr. Craven filed a declaration with the PTO notifying them of the prior transfer from Wildcat to Varco L.P. or to MD TACO of the 142 patent. And so it was Varco L.P. that this corporate structure identified as the right party to prosecute the re-examination of the 142 patent. In that case, we got caught between a rules conundrum. The Patent and Trademark Office rules require that an assignment that is filed has the patent number on it. The case law does not. The case law says you can assign all of your assets. The ACA could not be filed with the Patent and Trademark Office because it did not bear a number. So we were in a conundrum. This second re-examination was filed without providing us notice. Fortunately, Mr. Baucus – Is there any evidence that there was a conversation going on among the various entities or lawyers saying, oh, my goodness, we can't record the ACA with the PTO? Because, in fact, the PTO doesn't look behind these types of recordations. It's a total ministerial act. Right. It's not evidence. Whatever you submit as the asset transfer and you file a declaration identifying yourself as the new owner, the PTO just accepts it and moves on. That's it. That's all that's required. It's simply notice. It's not evidence of ownership. Your Honor is correct. But the rules require that it must identify the patent by the patent number. Therefore, the ACA itself could not be filed because it simply says all. Mr. Alley. Yes, ma'am. This all seems to be a discussion about parole evidence, but I don't understand the lower court as having found the contract to be ambiguous and thus to have a need to turn to all of these questions of who asserted it when and who was claiming ownership where or who was the assignee before the PTO registered, etc., etc. I understood the lower court to base its decision on several alternative theories of why the plain language of the contract itself didn't actually transfer the patent at issue. So could you do me a favor and please focus on why the district court was wrong to conclude that this patent was not a physical asset that was transferred pursuant to the asset contribution agreement? Thank you, Your Honor. As Your Honor knows, the whole goal of contract law is to determine the intent of the parties. In this case, the lower court allowed a third party to rewrite the contract, deleting key phrases, and declared that the contract unambiguously reached a meaning that neither of the actual parties to the contract intended. And, Your Honor, the Lockheed Martin v. West case, Federal Circuit 97, which we've cited, said that words are given their ordinary meaning unless the parties have their own meaning, which is understood by them. So with that understanding, let's look at the assets contribution agreement. So is it your understanding that the words physical assets under Delaware law, because we would be applying state contract law to the interpretation of this phrase, doesn't typically include patents, but that this contract on its face makes it clear that the parties intended otherwise? Yes, Your Honor, because here's why. You do concede, though, that Delaware law doesn't normally consider patents to be physical assets. Yes, Your Honor. Okay. So here's why. The whereas clause of the contract says contractor desires to contribute all of its physical assets, including but not limited to those assets generally described in Exhibit A of the property, excluding any capital or common stock of subsidiaries or owned companies. Now, a stock also, Your Honor, is not, in the ordinary sense of the word, a physical asset. So if the contract is interpreted the way our opponents in the court interpreted it, this sentence would make no sense at all. For example, you can say all cars except brown Buicks, and that makes sense because a Buick is a car. But you can't say all cars except brown horses. So if you interpret physical as the ordinary sense of the meaning, then there's no reason to put the rest of the sentence that says excluding any capital or common stock. And so physical, according to the parties, was in no way a limitation of the transfer. And that's confirmed, of course, if the court finds ambiguity, that's confirmed by all of the contemporaneous documentary evidence. The secretary's certificate signed later that day by Varka. I'm not interested in talking with you about parole evidence. Oh, yes, Your Honor. Because I can't decide it. What the parole evidence explains to someone is a question of fact. It's not a question of law. That is not something that I do in the first instance. So stop talking about parole evidence. Yes, Your Honor. Tell me why the plain language includes patents, and in particular this patent. And here is my concern. Even if you're correct that the party's intent, as expressed in this overall document, is that patents would be included among physical assets that were, in fact, contributed as part of this asset contribution agreement, and the only way I could get to that is, of course, by looking at Exhibit A. And Exhibit A actually has a line that says patents on it. So I don't think that your argument is a terrible one by any means, that since Exhibit A actually has a row that says the patents and lists the asset value for each company that transferred patents for the respective patents, it's included. So I don't think that your argument is a terrible one in that physical assets, and they mention as described in Exhibit A, and patents are described in Exhibit A. So maybe it is clear from this document that the intent of the parties was that patents be included as physical assets. Maybe so. But then the problem is the subsidiary that owned this patent is VARCO-LP. And when you look at the column for VARCO-LP, it says that as part of this asset contribution agreement, it is contributing $0 worth of patents. And so this isn't a case where they left it blank, where it was undefined what they were contributing. It expressly says some people are contributing patents as part of this asset contribution agreement, but VARCO-LP is not contributing patents. So how is that not plain language that indicates that no patents owned by VARCO-LP were contributed as part of this asset? A patent has no value unless it is currently collecting revenues, and there were probably hundreds or even thousands of patents that issued. Where do you get that idea from? I have never, ever, ever heard someone suggest what you just said. That is a direct monetary value. A patent has no value unless it is collecting revenue. Let me rephrase, Your Honor. It is difficult to assess a mathematical value without speculating. We think this patent may be worth this much. And rather than go through hundreds or even thousands of patents and try to speculate on a value, since this was an agreed exchange between two subsidiaries of one company and everybody knew what was going on, they decided not to wade into that and try to assess a value for all of these patents. So they just thought it was okay to say all and then list patents. And that is what they did, and they knew what they were doing, and that is what they did. Do you understand why, though, that a zero entry looks very specific and suggests that VARCO-LP is not including MD-TACO's patents in the transfer? Just looking at the... Just looking at it, I can see how it could be misinterpreted, Your Honor, but they had hired an auditor to assess the value of the assets that prepared Exhibit A, and it was attached, and it was the understanding, and I see that I am almost out of time. I'd like to address the present tense, past tense thing very briefly if I could so I could make sure that I get that covered. Well, I'll make sure I answer Your Honor's question first. Okay, well... You go ahead. I think that at this point you have actually used all of your time, all of your rebuttal time, and you're beyond your time, so we're not going to hear anything more from you right now. Oh, I thought the clock was winding down from 11. 11? Yes, it was 11 and 4. No, it was winding down from 15. 15, that's correct. So I think that you need to be seated. My apologies, Your Honor. I misread the clock. Everything else, I hope, is briefed adequately. Thank you, Your Honor. Mr. Lowery? Thank you, Your Honor. Matt Lowery from Foley & Lardner for the appellee. Kim Dada, partner at Foley & Lardner. Mr. Lowery, what law applies to this clause in the asset contribution agreement? Delaware law or Federal Circuit law? Both, Your Honor. Both? Yes, Your Honor. The first issue is. That's a really interesting idea. Okay, I've never seen that before, so please continue. Yes, Your Honor. So the first question is, was there an assignment when the contract says concurrently shall convey rather than hereby does convey, is that a present assignment or a promise to assign? If it's a present assignment, there's standing. If it's a promise to assign, there's not. That's an issue of Federal. You mean the word agrees to transfer? It says agrees to transfer, and there's others that say concurrently shall convey. You better get your appendix out and show me exactly which one you're talking about. I'd like to know precisely which sentence in the asset contribution agreement you are saying is governed by Federal Circuit law. Section 1.2. Okay, I'm there. Commands of property, yes. Concurrently with the execution of this agreement, contributors shall convey. Shall convey. Why is that governed by Federal Circuit law? Because if that's a promise to separately convey. If I promise to separately convey to you my house, is that governed by Federal Circuit law? No, but if it's a patent, it is. Where does this clause say that it's limited to or pertaining to patent rights? The clause itself does not, but whether a promise is a promise to convey in the future or a present. In all cases? Is it governed by Federal Circuit law? That's my understanding of the precedent. Let me get something straight. In the table, there's an entry for assets called furniture and fixtures. Yes, Your Honor. Now, this particular provision in the ACA covers that type of asset, furniture and fixtures, with several million dollars. So are you saying that Federal Circuit law covers whether this is an actual assignment versus just a mere promise to assign? I don't understand there to be a difference between Federal Circuit law and Delaware law on this issue, but it would be my understanding, Your Honor, that Federal Circuit law applies to whether it's a current transfer. But I guess the point is if we were in Delaware state court right now, the Delaware state court would almost certainly interpret this provision in the ACA under Delaware state law when it came to whether or not $50 million of furniture and fixtures were transferred from VARCO LP to National Oil Well LP. Correct, Your Honor. So now we're in a conundrum because you're telling us that the exact same provision, maybe for one class of assets, will be interpreted under one law, but for every other asset that's listed in the table, this exact same generic provision is going to be interpreted by some completely other jurisdiction of law. Again, I don't think it makes a difference for this appeal, but I believe that's correct, and here's why. When you say you don't think it makes a difference for this appeal, I see no briefing of Delaware law on this point anywhere in this case. So I'm just supposed to accept your view of Delaware law that you're proposing to me from the podium? The only precedence that's been offered is Federal Circuit precedence on this issue. And the reason, Your Honor, is because Section 261 is a Federal patent statute that requires that the assignment of patents be in writing. And as I understand this Court's holdings, it has said that that makes it an issue of Federal law. Where does it say that? Where does our Federal Circuit law say that a general clause that never mentions the word patents and that undisputedly assigns all assets of a company is governed by Federal Circuit law? The only precedent that I can think of, all the precedent I'm aware of is cited in the brief, and it all concerns agreements that are generally governed under state law, but it treats an assignment as Federal law because the statute says assignments have to be in writing. And what qualifies as a writing sufficient to transfer a patent under Section 261 is reasonably, it doesn't matter what the other thing is. If it's sufficient for Delaware, that's great. But it's not sufficient for Section 261 of the Federal patent statute, and that's why I believe it to be an issue of Federal law. Do you know if any of those prior Federal Circuit cases were interpreting a generic provision like this when it's talking about a whole genius of assets well beyond just patents? Or were they all just specifically a transfer of a patent? Yeah, I don't believe that this was an issue addressed in the briefing here, so I didn't review the cases for that particular issue off the top of my head. I can't think of one. However, I can say that almost like the employment agreements, having done a bunch of them, there are almost always agrees to assign all rights, and that would include patent rights, trade secret rights, all kinds of rights, many of which are state law, which until recently would be all trade secret ones. And all of those say even in that employment agreement where there's patent rights, trade secret rights, and other rights, the patent right issue is determined as a matter of Federal law. Well, that's because it's determined as a matter of Federal Circuit law because it is a clause that deals in particular with patents and spells itself out as such. It says patents. In Stanford-LaRoche, in every one of the employment cases, it said patents. I was on the case in Stanford-LaRoche, and what we explained in that opinion, this is not personal knowledge, this is what's explained in the opinion, is that we were looking at future rights to be developed. It wasn't naming particular patents. It was talking about if you, employee, invent something in the future, then you will have to agree to assign it to us in the future if rights are secured on it. So it made total and complete sense that that was a forward-looking, future-based assignment. I guess I'm having trouble understanding why this clause would be governed by that very specific law that deals with an employment contract and later arising rights, and in particular, in each of those cases, I don't know if the clauses at issue pertain to other rights. You may be right, but the only one we claim to be speaking to was patents, and it was expressly called out, patents in the contract, unlike this one that doesn't have a patent. Well, to begin with, I think that's an excellent point. This doesn't call out explicitly for a transfer of patents, so to therefore conclude it's a transfer of patents under state law would kind of beg the question that it's not calling for a transfer of patents in the first place. To the extent it purports to. No, it's calling for a transfer of all physical assets. Right, and that would be the, which we would say does not include patents, and I'd like to address that, but in addition, the Abraxas case dealt with issued patents, so it's not a future developed patent. And that clause was limited to patents. You can look at the clause itself, and it says, agrees to transfer patent rights. Right. So it makes sense that federal circuit law would apply. Trust me, you don't want federal circuit law applying to general contract provisions. That would be a disaster. You'd end up with all this forum shopping between, well, if I'm going to claim that a patent is in here somewhere, therefore federal circuit law applies and not state contract law. We have no business attempting to usurp the role of the state courts in assessing and governing general contract provisions like the transfer of all physical assets. We're going to say the transfer of all physical assets is governed by federal circuit law, and we're going to interpret that according to federal circuit law. Again, Your Honor, this was not an argument I believe submitted to the district court, but yes, the federal, it would be formed. You want the federal circuit law to govern a clause that says the transfer of all physical assets. No, only the portion as it pertains to patent and whether that satisfies Section 261 of the Patent Act. So let me ask you this hypothetical, because we have some problems with the way this is phrased. But instead of saying they agree to transfer all physical assets, this says they agree to transfer all physical and intangible assets, clearly including patent rights. Your view is federal circuit law applies to that clause to the extent it transfers patent rights, but state law applies to the extent it transfers everything else? Yes, it is a federal issue whether Section 261 has been satisfied that it be in writing. In fact, to the forum shopping question- Isn't the point of contract interpretation to get to what the parties mean? How could they possibly mean two different things if they're using the same clause? The question again is, has it satisfied the Federal Patent Act? And in state law, it does control- So your view is that the Patent Act requires some kind of separate statement about the transfer of patents? The Patent Act requires a present assignment. That's my understanding of the law. I'd like to address, if I could, the notion of whether a patent could be a physical asset. That's not answering the question. I'm sorry. I mean, it can be a present assignment without having- being complying with our language, our precedent. It can be a present assignment of physical rights without complying with our patent-specific case law, right? Yes. And so if they use one clause to transfer all assets, and that was meant to be a present assignment, you're saying for purposes of non-patent law or non-patent assets, it could be a present assignment, but for purposes of patent rights, it isn't, even though the parties intended by it from its plain language to it transfer everything. Well, first of all, the objective intent under all of the cases that have addressed it that have been cited to this Court is that shall convey is not intent to transfer. The objective intent- That's our law, though. Let's assume the state law is different. That's an assumption that's not been asserted. Well, I'm asking you hypotheticals because it seems to me you're presenting an almost absurd position that we have to interpret the same sentence two different ways, depending on whether it applies to physical assets or patent assets. And I can't imagine that any parties engaging in an asset transfer would intend that. The same would be true in the employment agreement where it incites all intellectual property rights, patents, and trade secrets. Those cases all deal with intellectual property rights only. But most of those rights are state law rights. Trade secrets is a state law right. But those are all dealing with, also in the employment context quite clearly, with inventions, secrets, copyrights, whatever, not yet acquired. In every one of those examples in the employment context, it is future developed assets. Here, there's no doubt we're talking about some preexisting physical assets. So just out of curiosity, your assertion, though it isn't briefed, is that Delaware law would be identical to Federal Circuit law and say this is a future conveyance? All I can say is I'm not aware of a difference. So does that mean nothing was transferred? Because this says shall convey. Your argument is no patents were transferred. Your argument would also have to be no other assets were transferred. The record is silent because there may be other documents that affect transfers. There could be other things that affect a transfer, for example, the furniture. We don't know. The record is silent on that because nobody made an argument that they were being treated differently. So the record is silent. If I may, I would like to address whether physical could include patents. And to be clear, as the district court found, that Exhibit A includes goodwill. It includes liabilities. And so the notion that the fact that it appears in there somehow in Exhibit A makes it. But liabilities aren't assets. So it says all physical assets described in Exhibit A. So liabilities naturally don't fall under that plain meaning. And the same would be true of intangible things as well. They're not physical. And, again, there's no explanation from NOV as to why. It's physical, but if it says all physical assets, including but not limited to those assets generally described in Exhibit A, those assets generally described in Exhibit A, patents are an asset that is described in Exhibit A, correct? It's an asset. It is an intangible asset that's listed in Exhibit A along with goodwill and along with the liabilities and everything else. So it is, in fact, an asset listed in Exhibit A. And it says desires to contribute all of its physical assets, including but not limited to those assets described in Exhibit A, patents would be an asset. So if I were to conclude that this meant to transfer patents as well, even though it used the word physical assets and one would never normally think of a patent as a physical asset, but if I read the plain meaning of this as defining everything, all of the assets in Exhibit A as physical assets, whether I agree with it or not, is irrelevant. But if I read it that way, then what happens to this case? If, Your Honor, were to read it that way, the patent still isn't included because there's a $0 value in the appropriate column. There's no dispute as to that. There was an argument that, well, if it's not, you know, we didn't value things. Well, there are actually non-zero entries for other divisions in the patent row. So they were plainly valuing the value of patents in that patents row. It's just there was a $0 in the column for BARCA. But his argument, whether it's true or not, I have no idea, is that for the non-zero columns, it's because those were patents that were actually revenue generating at the time of the assessment that was done and that that's how we came up with those numbers and that we put zero in any column where there weren't revenue generating. Yeah, and the district court expressly addressed that and said that that cannot be the case because, first of all, that's not the way that balance sheets are generally set up, as evidenced by the balance sheet where furniture is at $44 million, but it's not generating revenue. The district court also noted that there is a separate portion of that sheet that's dedicated to revenue, indicating that this is not intended to be a revenue situation. And third, like all of these issues, there's no explanation from NOV as to why – not from NOV. There's been a couple of references by its attorneys in statements, but there is nothing from NOV saying, this is why we said physical assets rather than all assets. I mean, what does physical mean if it's including everything? There's no explanation as to why the $0 – if Your Honor looks at the record, there's nothing from NOV that says, well, we did it because it's license generating revenue. That's an attorney argument, but it's not anything that's actually based in the record itself. Can I ask a practical question? If you prevail in this instance, the patent expired, I think, three years ago. Is that right? I believe that's approximately correct. If you prevail, that means VARCO LP still owns the patent, correct? No, Your Honor. No? Not necessarily. That's an issue that hasn't been adjudicated. What Judge Sparks found was that, in part, it can't be cured because that $0 means either it wasn't transferred and they deliberately put a $0, or maybe VARCO LP didn't own it in the first place. And that's not clear that VARCO – Okay. Well, assuming that VARCO LP owned it in the first place, but the 0 means it wasn't transferred, then VARCO still owns it, correct? If VARCO owned it and didn't transfer it, VARCO would still own it. Yes, Your Honor. And the patent expired three years ago, but patent statute allows for damages to go back six years. So VARCO LP could bring a suit against you, your company, or Amran, for at least three years' worth of damages. Is that right? Potentially, but they haven't done it, and so we haven't brought our defenses, and we haven't looked at it. Okay. Thank you. Anything further? No? Thank you very much. Thank you, Your Honor. We'll give you two minutes of rebuttal, Mr. Riley. Thank you, Your Honor. I very much would like to get to one issue quickly because counsel has focused on the desires to and agrees to language and says that's a future tense. He's ignoring that the Article 1.2 says, Concurrently with the execution of this agreement, contributors shall convey, assign, transfer, and property to the partnership. Our position is that at the moment of execution, that's when the transfer occurred. It's present tense. And if the court, and I think it's a logical conclusion as an alternative, concludes that the contract is ambiguous because of the word physical, because of the zero, because of the agrees to, versus the concurrently with the execution of the agreement, then the contemporaneous, I know Your Honor, What's ambiguous about the fact, even if we agree with you that physical, you specially define by saying including all assets listed in attachment A, what's ambiguous about putting a zero value for any assets in a column? Nothing, Your Honor. It's our position that in context, the ACA unambiguously transfers assets. I'm just saying if the court determines in its wisdom that the contract is ambiguous, then the contemporaneous. I don't think you understood my question. I'm sorry. I apologize. I don't see what's ambiguous about the fact that if there's a zero there, there were no assets transferred for that column. I understand you made this argument about revenue generation. Is there anything in that document that suggests that that's the definition of it, rather than there were no patents for this column? There's no answer to that question in the document yourself, Your Honor. Well, then why isn't the zero unambiguous? I don't know how you assess the value of a patent that is not currently generating revenue. I don't know how to do that. And rather than wade into that with hundreds or thousands of patents, they decided to use the word all, and in their mind they were transferring all of the property. So that's why I say… But the document doesn't say that. That's just you telling us that today. The document says all of its physical assets, including but not limited… No, no, no. I'm not talking about the all physical assets. I'm talking about the distinction between revenue generating patents and patents that aren't generating revenue. Respectfully, Your Honor, is making an assumption that the zero means that there were no patents. That is an assumption of the court, which is belied by the contemporaneous evidence. Your Honor, not only from the document itself, but from the contemporaneous record from… Well, you say it's belied by the assumption of the document itself. Where is it belied by the document itself? Because it says all of its physical assets, including but not limited to those assets, generally described in Exhibit A. So Exhibit A, Your Honor, is simply an example of the type of assets that are transferred. It's never meant to be an all-inclusive list. You don't want to talk about extrinsic, but there's testimony from both parties to that effect. Okay. I thank both counsel for their arguments. Thank you, Your Honor. The case is taken under submission.